[Crim. No. 1031.   Fourth Dist.   Feb. 27, 1956.]

THE PEOPLE, Respondent, v. CLIFFORD COLEMAN WOODS, Appellant.

Clifford Coleman Woods, in pro. per., Johnson & Johnson, and Charles M. Snell for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was charged in one count with possession of heroin and morphine on November 4, 1954, in violation of section 11500 of the Health and Safety Code; and in a second count with bringing a narcotic into a jail, in violation of Penal Code, section 4573.

Three prior convictions of felony were charged and admitted, to wit, burglary, possession of narcotics, and smuggling opium, for which he served separate terms of imprisonment.

On a motion to set aside the information the court granted it as to the second count, and denied it as to the first. Defendant was represented by counsel. A trial by the court resulted in a conviction on the first count. A new trial was denied and defendant was committed to state's prison. In propria persona he filed an opening brief on appeal. He does not challenge the sufficiency of the evidence to show possession of a narcotic. However, he does challenge the judgment rendered on the ground that he was denied due process of law in that he claims evidence was obtained from his person in violation of his constitutional guarantees and in violation of the exclusionary rule announced in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. In support of the argument he relies principally upon *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]; and *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26].

The evidence shows that one of the sheriff's officers on the narcotics detail saw defendant at about 8:50 p.m. on November 4, 1954, when he was brought into the main sheriff's office in San Diego; that he examined him for the possibility that he was then under the influence of a narcotic, and informed defendant that he was going to summon a doctor to examine him to determine the matter. He testified that the defendant told him that he had previously that day gone to Tijuana with a Negro companion and while there he had purchased a narcotic and had snuffed it into his nostrils; that he then told defendant he had reason to believe he might have a narcotic secreted on his person, and asked him to remove his trousers and bend over for an examination; that he voluntarily did so; that by the aid of a flashlight

he examined his rectum; that he saw a greasy substance around the anus and it had a rough, reddish appearance; that he then told defendant that should he have any narcotic secreted there it would be a felony to take it into jail, and that defendant stated he had none; that he then told defendant he was calling a doctor, which he did, to determine whether defendant was under the influence of a narcotic; that when the doctor arrived he examined defendant's eyes, arms and nostrils, and by the aid of a swab removed some substance from defendant's nose which he gave to the officer and stated in defendant's presence that in his opinion defendant was under the influence of a narcotic; that he again cautioned defendant, before taking him to jail, about taking any narcotic with him in any way and that defendant again stated he had none in his possession; that he took him to jail and into the jail clinic with the doctor; that he requested defendant again to remove his trousers and bend over, and that defendant stated: "I want you to know that I am going to do this under protest," and that he told defendant: "All right, it will be done under protest"; that Woods removed his trousers and the doctor put a rubber glove on his hand; that defendant bent over and the doctor inserted a finger into defendant's rectum and said: "There is an object in his rectum"; that when defendant, at that time, reached around with his left hand, he told him there was no point in interfering with the doctor; that he and another officer then took hold of defendant's hands to prevent him from interfering with the doctor, and that the doctor removed a rubber finger stall with one gram of powdered substance containing morphine and heroin. It was offered in evidence and objection was made on the ground it was obtained from the person of defendant, in violation of his constitutional rights, under the Fifth and Fourteenth Amendments to the United States Constitution, and article I, section 13 of the California Constitution. The objection was overruled. The officer testified that thereafter, in the sheriff's office, he questioned defendant and told him he was going to charge him with the felony of smuggling the narcotic into jail, and that defendant then admitted he had purchased it in Tijuana that day and placed it there for the purpose of transporting it into the United States.

The doctor testified in more detail as to his examination of defendant and concluded he was under the influence of a narcotic before he was taken into the jail. His testimony

as to the rectal examination was substantially the same as that related by the officer. He testified there was nothing unusual about this type of examination, and there was very little, if any, pain in connection with it.

After the People rested their case defendant's counsel moved to strike the evidence on the grounds stated in the objections to its admission. The motion was denied.

Defendant then testified that the officer first examined him, as he stated, to determine if he was under the influence of a narcotic, tested his eyes, and looked at his arms, but did not examine his rectum and did not ask him to remove his trousers, but did call the doctor who there examined his eyes, arms, blood pressure, and heart, but made no examination of his rectum; that he was then taken into the jail dispensary and the officer asked him to remove his trousers; that he inquired as to the reason and was told it was for the purpose of making some form of examination upon his rectum; that he was told to eject the substance contained therein if he had it secreted there but he told them he had none and the officer said then he should have no objection to submitting to the probing activities of the doctor; that he told them: "I had no objections to it"; that "I was not afraid of anything being found that would criminally incriminate me"; that since the officer informed him that it would not be possible for him to go into the jail with something hidden upon his person and they were going to perform the examination anyway, he announced that they were proceeding under his protest; that they held his hands and that he felt considerable pain; that the doctor removed the object and it was the heroin there in evidence; and that he placed it in his rectum in Tijuana to transport it across the border.

The court, in summing up the evidence, remarked that the testimony of defendant, particularly as to any claimed harsh or brutal treatment, was not worthy of belief, as opposed to the testimony of the officer and the doctor. Defendant's motion for new trial was denied and judgment was imposed. Counsel for defendant also filed an opening brief and presents about the same contentions made by defendant.

It is respondent's position that the heroin (the possession of which defendant admits) was not obtained in a manner which shocks the conscience or offends our concept of liberty; that this case is factually distinguishable from the Rochin case, *supra*, and that there was no evidence obtained as a

result of an *unreasonable* search and seizure; that accordingly the Cahan case is not applicable; that the evidence was obtained by a medically approved method and in accordance with law; and that the resulting judgment of conviction should be affirmed.

The main question is whether the facts in the instant case bring it within the rule laid down in the cases relied upon by defendant. In the Rochin case (1952) where deputy sheriffs having some information that accused was selling narcotics, entered the open door of a dwelling house, forced open a door to accused's bedroom, and forcibly attempted to extract capsules which accused swallowed, and at a hospital a physician, at deputy sheriff's direction, forced an emetic solution through a tube into the accused's stomach against his will and this "stomach pumping" produced vomiting, and in the vomited matter were found two capsules containing morphine. It was held under the facts of that case that the use of capsules to obtain the conviction of the defendant for illegal possession of morphine violated the due process clause of the Fourteenth Amendment; that a state's conviction cannot be brought about by methods which offend the sense of justice, and that involuntary verbal confessions are inadmissible in state criminal trials under the due process clause of the Fourteenth Amendment, even though statements contained in them may be independently established as true. Justice Douglas, in a concurring opinion, although conceding that evidence obtained from the accused's stomach would be admissible in the majority of states where the question has been raised, was of the opinion that the evidence would not be admissible because of the provisions of the Fifth Amendment to the Constitution of the United States, and that a person is compelled to be a witness against himself when evidence is forcibly taken from him.

Since the trial of the instant case and since these decisions were rendered, our Supreme Court (in 1955) *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], has invoked new rules in reference to the admissibility of evidence obtained in violation of the constitutional guarantee against unreasonable search and seizure.

In *People* v. *Martinez, supra* (1954) (hearing denied with one dissent) it was held that a defendant in a narcotics case was deprived of due process of law where his conviction was obtained by use in evidence of a package of heroin which he had put in his mouth and which was extracted therefrom

after he was choked and wrestled to the ground by arresting officers. It was there said that the reasoning in the Rochin case was applicable to the facts of that case. However, in *People* v. *One 1941 Mercury Sedan* (1946), (hearing denied with two dissents) 74 Cal.App.2d 199 [168 P.2d 443], where the stomach of the defendant was pumped and a narcotic was found, it was said, at page 212:

"In line with the weight of authority it is our opinion that the privilege against self-incrimination does not preclude the introduction of physical disclosures the defendant is forced to make, or the results of tests to which he has involuntarily submitted. It is our view that the privilege only protects the individual from any forced disclosures made by him, whether oral or written. It is limited to the protection against testimonial compulsion."

In the Cahan decision, *supra,* page 446, the question of admissibility of coerced evidence is discussed and the Rochin case is cited for the statement that a defendant may not be convicted on the basis of evidence obtained by the rack or the screw, or other brutal means, no matter how reliable the evidence obtained may be. In *People* v. *Dawson* (1954), 127 Cal.App.2d 375 [273 P.2d 938] where the officer, when he saw the defendant place his right hand to his mouth and put something in it, put his arm around defendant's neck and told him to spit it out, placed the handcuffs on him, and after a slight struggle, defendant did spit out three bindles of heroin, the court rejected the claim that the due process guaranteed by the Fourteenth Amendment to the Constitution was violated because no "brutal or shocking force" was shown, thereby distinguishing the facts from the facts in the Rochin case. (See also *Ash* v. *State,* 139 Tex. Crim. 420 [141 S.W.2d 341].)

In *People* v. *Haeussler* (1953), 41 Cal.2d 252 [260 P.2d 8] (certiorari denied by the U.S. Supreme Court (1954), 347 U.S. 931 [74 S.Ct. 533, 98 L.Ed. 1082]) the court said at page 259:

". . . The Rochin decision does not rest upon the premise that the taking of evidence from the person of a defendant or by entry into his body is the decisive factor. Instead, the entire course of conduct was examined and found to be brutal and shocking. The court disclaimed any intent to fix rigidly the confines of due process by asserting that they must remain 'indefinite and vague'. That blood tests and similar techniques may stand against constitutional objection

is suggested by the statement: 'We therefore put to one side cases which have arisen in State courts through use of modern methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a subject as is revealed by this record.' "

It was then held that the taking of a blood test, when accomplished in a medically approved manner, does not smack of brutality. In that case the defendant was unconscious at the time the blood was withdrawn and the removal of four or five cubic centimeters was necessary to provide medical treatment. The only unauthorized action of the medical attendant was to remove one additional cubic centimeter of blood after the hypodermic needle already had been inserted. It was held that this conduct could not be characterized as shocking to the conscience and in violation of due process of law. To the same effect is *People* v. *Tucker* (1948), 88 Cal.App.2d 333, 342 [198 P.2d 941], decided by this court (hearing in the Supreme Court denied.)

We are in accord with the announced judgment of the trial judge that the actions of the officers were not so brutal and shocking that they offended the due process clause. Accordingly, there is a fundamental difference between this case and the facts in the Rochin and Martinez cases.

The next question is whether the exclusionary rule announced in the Cahan decision in reference to unreasonable search and seizure is applicable. It is argued by the attorney general that under the evidence there was reasonable or probable cause for the officers to believe that a felony was being committed and the search for and recovery of the narcotic was incident to the lawful arrest of a felon and that it was proper for the police officers, as an incident to the lawful arrest, to search and seize articles which they believed were being used in the commission of the crime.

In *In re Dixon*, 41 Cal.2d 756 [264 P.2d 513], according to the testimony, two police officers, who were looking for a Mr. Levitt, went to petitioner's apartment and rang the bell. They identified themselves as police officers when petitioner came to the door and invited them to enter. While one of them was talking to petitioner, the other, standing in the inner doorway and looking into another room, observed some of the equipment assertedly used by petitioner for counterfeiting, including a 10-dollar bill taped to a printing frame

before a camera. The officers then arrested and handcuffed petitioner, the premises were searched, and certain articles were seized. The police officers telephoned United States secret service agents, and additional evidence was discovered after the federal agents arrived, but the record shows that such evidence was voluntarily disclosed to the agents by petitioner in response to their questions. The officers and agents denied that petitioner was beaten or threatened, and there was testimony that his confession was given freely and voluntarily and that no force was used upon him except for a slight scuffle when he was handcuffed. The court concluded from the evidence that the police officers lawfully entered the apartment; that they thereafter had reasonable cause for believing petitioner had committed a felony; that hence they could arrest him without a warrant; and that it was proper for them, as an incident to a lawful arrest, to search the premises and seize articles which they believed were being used by petitioner in the commission of the crime for which he was arrested. See also *People* v. *Martin,* 45 Cal. 2d 755 [290 P.2d 855], where the officers searched an office building without a search warrant, after seeing bookmaking paraphernalia therein through the window. It was there held that the search of the premises was not illegal because the offense was being committed in their presence.

In *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528], it was held that in the absence of anything apparent to the officers' senses, before an arrest and search, that defendant was committing or attempting to commit a public offense, the arrest cannot be justified on the ground that an offense was being committed or attempted in their presence.

In *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535], it was held that where officers waited and watched for someone to enter a hotel room, and one of them grabbed defendant's hands as she entered the room and found bindles of heroin in one hand, any trespass on their part was entirely unrelated to the securing of the evidence they obtained, and could not render that evidence inadmissible; that if an arrest under Penal Code, section 836, subdivision 3, was lawful, the search incident thereto would not be unlawful merely because it preceded rather than followed the arrest; that under that subdivision, authorizing an officer to make an arrest when a felony has in fact been committed and he has reasonable cause for believing the person arrested has committed it, evidence other than that turned up in a search is present in

any case in which the officer has reasonable cause to believe defendant guilty of a felony, and when his belief of defendant's guilt is based on reasonable cause and a felony has in fact been committed, not only are the requirements of subdivision 3 satisfied but a search incident to an arrest thereunder is reasonable. Since the court and not the arresting officer must make the determination whether the officer's belief that a felony was being committed at the time of the arrest was based on reasonable cause, the officer must testify to the facts or information known to him on which his belief is based. Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt.

In *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531], a police officer observed two young men walking at night in a warehouse district, stopped them, searched them, and found a marijuana cigarette in defendant's pocket. The other man had a bottle of liquor. With respect to his reasons for the search and arrest, the officer testified he suspected them of committing a crime, i.e., possession of liquor by a minor. The court cited *People* v. *Brown, supra,* holding that it did not appear from the evidence that the officer had reasonable cause to believe that the defendant had committed a felony or committed a misdemeanor in the officer's presence.

In *People* v. *Coleman,* 134 Cal.App.2d 594 [286 P.2d 582], it was held that the rule prohibiting use of evidence obtained through unlawful search and seizure does not apply to narcotics seized in a search made contemporaneously with a defendant's arrest without a warrant, by officers who had reasonable cause to believe he had committed a felony involving illegal sale or possession of narcotics; that ''a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith''; and that a ''seizure, during such a search, of evidence related to the crime is permissible.'' It stated that the Cahan decision, reversing the tenor of California law, held that evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure, is inadmissible, but it does not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest, citing authorities.

Reasonable cause has been defined by our California Supreme Court as such a state of facts as would lead a man

524

of ordinary care and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime. (*People v. Kilvington*, 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].) Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*People v. Brite*, 9 Cal.2d 666, 687 [72 P.2d 122]; *Bompensiero v. Superior Court*, 44 Cal.2d 178, 184 [281 P.2d 250]; *United States v. Bell*, 48 F.Supp, 986; *Cook v. Singer Sewing Machine Co.*, 138 Cal.App. 418, 422 [32 P.2d 430]; *Coverstone v. Davies*, 38 Cal.2d 315 [239 P.2d 876].)

The latest expression of opinion in reference to reasonable search and seizure is related in *People v. Blodgett*, 46 Cal.2d 114 [293 P.2d 57] (decided Feb. 3, 1956). There, defendant was charged with possession of marijuana. The officers searched the taxicab in which defendant was riding, after observing previous suspicious and unusual conduct of defendant and other passengers. Marijuana was found back of the rear seat. The contention was made that the cab was unlawfully searched and the evidence obtained was inadmissible. The court said the search, in view of the circumstances, was justified since the officers had reasonable grounds to believe that defendant was hiding contraband. To the same effect is *People v. Martin*, 46 Cal.2d 106 [293 P.2d 52] (decided Feb. 3, 1956) where the officers ordered the suspects out of the car and after searching them for weapons, reached into the car and took out a pack of marijuana. The court held that the facts related were themselves reasonable cause for police investigation and it was reasonable for the police officers to order the suspects to put their hands in front of them and get out of the automobile in order to search for weapons before questioning them, and that the officers were justified in taking the marijuana from the automobile.

In *Taylor v. Fine*, 115 F.Supp. 68, 70, it was held that incidental to a legal arrest, whether with or without a warrant, the officers may make a reasonable incidental search, citing cases. (See also *Brinegar v. United States*, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879]; *People v. Hupp*, 61 Cal.App.2d 447 [143 P.2d 84]; *United States v. Li Fat Tong*, 152 F.2d 650; *United States v. Chin On*, 297 F. 531.)

In the instant case defendant was under arrest for being under the influence of a narcotic, a misdemeanor, violation of a county ordinance. The officer was justified in making the arrest of the defendant on that ground and placing him in

jail pending the hearing on the charge. The officer, at that time, after the examination he made of the defendant, who was about to be imprisoned, was justified in believing the defendant was about to bring with him into the jail narcotics concealed in or on his person, in violation of section 4573 of the Penal Code, a felony. He related to the defendant that *"he had reason to believe"* he did have possession of narcotics, and the physical examination revealed sufficient circumstances to indicate that such narcotics were concealed in the place where they were found. Under such circumstances a reasonable search of the defendant was authorized. ▆ It must be recognized that persons about to enter jails or penal institutions may be examined by the custodian of such institutions for the purpose of preventing the bringing in of weapons and contraband. When this examination is reasonable and not conducted in a brutal or shocking manner, there is no constitutional inhibition. The right of peace officers to search persons lawfully arrested and to seize things connected with the crime is well established. (*Harris* v. *United States*, 331 U.S. 145, 151 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Rabinowitz*, 339 U.S. 56, 61 [70 S.Ct. 430, 94 L.Ed. 653]; *Agnello* v. *United States*, 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *McIntire* v. *United States*, 217 F.2d 663, 665.) The Cahan case, *supra*, stated only the rule of evidence, now adopted in California by judicial decree, that evidence obtained by unreasonable search and seizure is inadmissible. It was said in that case that in deciding to follow the exclusionary rule doctrine of the United States Supreme Court, California would not necessarily be bound by the decisions that have applied the federal rule, and to the extent that these decisions have developed needless refinements and distinctions, they would not be followed; that if the federal cases indicate needless limitations on the right to conduct reasonable searches and seizures or to secure warrants, this court is free to reject them; and that the adoption of the exclusionary rule opens the door to the development of workable rules governing searches and seizures, the issuance of warrants that will protect both the rights guaranteed by the constitutional provisions, and the interests of society in the suppression of crime. Apparently there is no established formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. (*Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 [51 S.Ct. 153, 158, 75 L.Ed. 374].)

The locus of the investigation was the area of San Diego near the Tijuana, Mexico, border line. ▇ Judicial cognizance may be taken of trafficking in narcotics in California, and particularly in the San Diego area, which is near the Mexican border. Intelligent and aware officers could not have failed to suspect that the defendant was under the influence of narcotics in view of his behavior and the circumstances which were apparent to them. They were familiar with the narcotics problem and its manifestations and the several methods employed in transporting narcotics across the border. In construing the application of the exclusionary rule in respect to unreasonable search and seizure, these facts should be considered. Here, according to the testimony of the doctor, the evidence was obtained in a medically approved manner. It was the usual rectal examination given to many patients of a doctor. It was a routine examination accompanied by very little pain, and the court found it was not "brutal and shocking," that it did not offend the due process clause, and that the search was not unreasonable under the circumstances.

▇ Defendant filed a closing brief, in propria persona, and again, as in his opening brief, made an effort to set forth certain claimed facts not before the trial court in the first instance which, he argues, entitles him to immediate release because the superior court had no jurisdiction to try him on the offense charged. In brief, he claims he was retained at the Mexican border by the United States Customs inspectors, who searched him and failed to find any narcotic, but believing him to be under the influence of a narcotic, released him to the sheriff for action. The argument is that since the officers of the United States government arrested him in the first instance, the federal courts alone had judisdiction to hear his case, and the state courts had no jurisdiction over him. Considerable authority is cited for this claim. Since the true facts in this respect were not presented to the trial court, and accordingly are not reflected in the record, this court cannot consider the question on this appeal. (*People* v. *Carmen*, 43 Cal.2d 342, 349 [273 P.2d 521]; *In re Roberts*, 40 Cal.2d 745, 748 [255 P.2d 782].)

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 8, 1956, and appellant's petition for a hearing by the Supreme Court was denied March 28, 1956.