**Matter of the Application of Clifford Coleman WOODS for the Writ of Habeas Corpus.**

Civ. No. 7561.

United States District Court
N. D. California, N. D.
July 31, 1957.

**934**

Clifford Coleman Woods, in pro. per.

Doris H. Maier, Deputy Atty. Gen. of State of California, for respondent.

HALBERT, District Judge.

Petitioner has heretofore filed with this Court a petition for a writ of habeas corpus. Upon examination of the petition, this Court issued an Order to Show Cause on June 19, 1957. Respondent has filed a return to the Order to Show Cause and a motion to dismiss, in answer to which, petitioner filed his traverse.

From the record it appears that petitioner was convicted in the Superior Court of the State of California, in and for the County of San Diego, of illegal possession of a narcotic, a violation of § 11500 of the California Health and Safety Code. The trial was before the Court sitting without a jury. Judgment was entered thereon on March 11, 1955, and thereafter petitioner was committed to the State Penitentiary at Folsom, California. The judgment and conviction were affirmed on appeal (See People v. Woods, 139 Cal.App.2d 515, 293 P.2d 901); a petition for rehearing in the District Court of Appeal of the State of California was denied on March 8, 1956; and a petition for a hearing by the Cali-

fornia Supreme Court was denied March 28, 1956 (139 Cal.App.2d at page 526, 293 P.2d 901). A petition for a writ of certiorari was sought in the United States Supreme Court and denied by that Court, February 25, 1957 (Woods v. California, 352 U.S. 1006, 77 S.Ct. 566, 1 L. Ed.2d 550).

Petitioner, by this proceeding, seeks to challenge his custody by the Warden of the California State Prison at Folsom, in which prison he is presently held in custody under the commitment issued by the Superior Court of the State of California, in and for the County of San Diego, as the result of the conviction above described.

From the record before this Court, it appears that on November 4, 1954, petitioner crossed the International Boundary Line between the Republic of Mexico and the United States and presented himself at the United States Customs House at San Ysidro, California, for a routine inspection. From the allegations of the petitioner's petition, an examination was conducted by the Custom's officials for the purpose of determining whether petitioner was concealing any narcotics on his person. This examination produced no results, but the Customs officials, having formed a belief that petitioner was at the time under the influence of narcotics, summoned the San Diego County law enforcement officers for the purpose of delivering petitioner into the latter's custody. Several hours elapsed before petitioner was surrendered to the county authorities. At approximately 8:50 p. m. on November 4, petitioner arrived at the San Diego County Sheriff's Office, and the sequence of events which followed are described in detail in the reporter's transcript of the proceedings at petitioner's trial.[1]

---

[1] Petitioner, in his allegations of fact before this Court, merely attempts to reassert the factual content of his testimony at his trial. The principal issue at the trial was whether the evidence procured from the body of the petitioner was admissible as against the contention that it was obtained in violation of the due process clause of the Fourteenth

Amendment of the Constitution of the United States. After hearing all the testimony relating to the events and circumstances surrounding the examination of petitioner, the trial judge concluded that petitioner's testimony did not represent the facts as they actually existed. While this Court does not sit in review of a state court proceeding (Odell v. Huds-

Officer Robbins, a Deputy Sheriff, into whose office petitioner was brought, testified that, upon observation of petitioner, he, too, was of the opinion that petitioner was under the influence of a narcotic (a San Diego County Ordinance makes such a condition a misdemeanor), and had reason to believe that petitioner was secreting a narcotic upon his person. Robbins testified that petitioner told him that he had purchased some narcotics in Mexico and sniffed the substance while there. In order to determine whether petitioner was concealing narcotics on his person, Robbins testified that he shone a flashlight around petitioner's rectal area, and discovered, "around the anus a greasy substance and the rectum itself appeared to be distended and had a rough, reddish appearance at that time" (RT, p. 8, lines 9–11). Petitioner denied, in his own testimony, that Robbins made such an examination, but merely intimated to him that in his opinion a narcotic was concealed in his rectum (RT, p. 51, lines 4–14). Robbins testified that he informed petitioner that he would be committing a felony if he were to go into jail with a narcotic concealed in or on his person (California Penal Code, § 4573). Thereafter, Robbins summoned Dr. Harry W. Depew, a Doctor of Medicine licensed to practice in the State of California, to conduct a physical examination of petitioner. After a routine examination in Officer Robbin's office by the Doctor, the Doctor joined Robbins in his conclusions that petitioner was under the influence of a narcotic and was concealing a narcotic on his person. Thereafter, petitioner was taken to the medical dispensary in the County Jail, at which place Dr. Depew, with the aid of Officers Robbins and Cash (who joined the former two there), conducted a rectal probe with his hand and withdrew a rubber fingerstall or condom therefrom containing one gram of powder consisting of 18.8% heroin and 17.6% morphine in a 50 milli-

gram sample, which became People's Exhibit 1 in evidence over the objection of petitioner.

There is some conflict in the testimony concerning what transpired prior to the recovery of the hidden narcotics. Petitioner testified that Officers Robbins and Cash forcibly held his head and arms in a forward bending position while Dr. Depew conducted his probe, and that he was held in this position for some ten to fifteen minutes before the package was extracted from him. Petitioner stated that the whole process was painful to him. Both officers testified that no force was applied to petitioner until he attempted to push the Doctor away from him during the course of the probe, and that, even then, they merely held petitioner firmly without knowingly or intentionally hurting him in any manner. In this regard, petitioner testified that Officer Cash wrapped one of his arms around petitioner's head, and held petitioner's right arm in a downward position with his other arm. When petitioner attempted to push the Doctor away from his rectal area with his left arm, Officer Robbins grabbed the left arm and twisted it upward along petitioner's back until the Doctor had withdrawn the package. Dr. Depew testified that the rectal probe he performed is a common, scientifically acceptable type of process, and that it only becomes painful when the patient refuses to cooperate by relaxing his tension. Both officers and the Doctor testified that the examination was completed within less than three minutes. All parties agree that petitioner lodged a protest to being required to submit to the examination. However, the transcript contains this testimony of petitioner (RT, p. 53, line 11 to p. 54, line 3):

"* * * He [Robbins] informed me or rather he told me that the only way that I could satisfy him that I didn't have a narcotic was by performing this examination and ejecting it from myself personally.

peth, 10 Cir., 189 F.2d 300), it is clear from the transcript that the trial judge in this case was fully justified in his conclusions. However, for the sake of clar-

ity, the major conflicts in the testimony will be brought out in the discussion which follows in the main text.

I told him that there wasn't anything secreted within my rectum for me to eject. So he says, well, if there was nothing that was within my rectum, then I should have no objections to submitting to the probing activities of him and the doctor. I told him that I had no objections to it, that I was not afraid of anything being found that would criminally incriminate me. So he said—no, I said that I wasn't afraid of him finding anything that would criminally incriminate me, although that I felt as though it was my right to maintain myself silent by deed or action insofar as submitting to an examination of this nature. So he informed me that I was—that it would not be possible for me to go into the county jail with something hid upon my person and that they were going to perform an examination regardless as to how I felt or regardless as to what my rights were in the matter."

The trial judge, after hearing all the testimony, concluded that defendant's testimony was not worthy of belief, and that, on the basis of the testimony of Dr. Depew, Officer Robbins and Officer Cash, petitioner had not been denied due process of law, and that the rubber fingerstall or condom containing narcotics was properly admissible in evidence.

Petitioner makes the following assertions in this Court:

(1) The Superior Court of the State of California, in and for the County of San Diego, had no jurisdiction to try him because he was apprehended initially by Federal Officials on a Federal enclave, and was thus triable exclusively by the Federal Government in a Federal Court;

(2) That he was subjected to an unreasonable search and seizure prior to a valid arrest, in contravention of the Fourteenth Amendment to the Constitution of the United States;

(3) That he was denied the equal protection of the laws by not having the rule announced in People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513, applied to exclude the evidence extracted from him;

(4) That the actual rectal examination violated the constitutional rights guaranteed to him under the Fourteenth Amendment; and

(5) The admission of the evidence obtained as a result of the examination was in violation of the due process clause of the Fourteenth Amendment.

### I.

#### The Jurisdiction of the State Court

Petitioner attempted to raise the jurisdictional issue for the first time on appeal (See People v. Woods, 139 Cal. App.2d at page 526, 293 P.2d 901) and the District Court of Appeal of the State of California declined to consider the question on the ground that petitioner's failure to present the question to the trial court barred him from appellate review of the matter. On this question, then, it is apparent that petitioner has failed to avail himself of his state remedies, and, therefore, this Court is without jurisdiction to consider the matter on its merits (Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; and Application of Meek, D.C., 138 F. Supp. 327). It may be noted, however, that even if this were not the case, it is the established law of this Circuit that petitioner has no constitutional right to be tried by one forum rather than another (Strand v. Schmittroth, 9 Cir., —— F.2d ——). In that case, Schmittroth sought his release from custody by the Sheriff of San Diego County by habeas corpus, on the ground that since he was on probation from a judgment and conviction in the United States District Court for the Southern District of California, the California authorities had no jurisdiction to prosecute him or to detain him pending prosecution for an offense against the forum. The Circuit Court, sitting *en banc,* in an exhaustive opinion held that mere physical custody is sufficient to confer jurisdiction over the accused for a criminal proceeding,

and that the consent of the accused, himself, is "of no consequence". The Court, in its opinion there, said of the defendant that, "His acquiescence, approval or resistance cannot affect the choice of forum." The Court further stated:

"It is well established that a sovereign, which has the paramount right to proceed with trial and sentence and which at the same time has custody of a defendant, may yield up the body to another sovereign and consent to trial of the defendant upon a subsequent charge by the latter and, of course, upon a prior charge. * * *

"Actual consent of one sovereign, whether express or implied, to proceedings in another forum wipes out all distinctions and is conclusive of all questions * * *."

In short, it is clear that where the physical possession of the accused is relinquished, whether forcibly or voluntarily, a second sovereign can assert its jurisdiction free and clear from the first when it obtains physical possession. The Schmittroth case is determinative of petitioner's first contention.

## II.

### The Search and Seizure

■ The principles of the Fourth Amendment which protect the "security of one's privacy against arbitrary intrusion by the police" are embraced within the scope of the due process clause of the Fourteenth Amendment, although that provision does not require illegally obtained evidence to be excluded at the trial (Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782; Irvine v. California, 347 U.S. 128, 132, 74 S.Ct. 381, 98 L.Ed. 561). To implement and enforce this constitutional guarantee, California has adopted the rule that evidence so obtained is inadmissible (People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513).[2] The question common to petitioner's second, third and fifth assertions, therefore, is whether the examination to which he was subjected violated the due process clause of the Fourteenth Amendment as that clause incorporates the concepts of the Fourth Amendment.

■■ It is well established that a search incident to a valid arrest is not invalid, so long as the arresting officer has "probable cause for believing that the suspect has or is committing a felony" (Blackford v. United States, 9 Cir., 247 F.2d 745, 749; United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59). In applying the "probable cause" test to the instant case, the conclusion is inescapable that petitioner was validly arrested prior to the rectal examination by Dr. Depew. His arrival at the border, and subsequently at the County Sheriff's Office in a drugged condition, and his own admission that he had sniffed a narcotic in Mexico that same afternoon were sufficient reasons to support the arrest and the subsequent examination by Officer Robbins which revealed the greasy substance around petitioner's rectum. As aptly stated by the California District Court of Appeal, regarding the arrest:

"In the instant case defendant was under arrest for being under the influence of a narcotic, a misdemeanor, violation of a county ordinance. The officer was justified in making the arrest of the defendant on that ground and placing him in jail pending the hearing on the charge. The officer, at that time, after the examination he made of the defendant, who was about to be imprisoned, was justified in believing the defendant was about to bring with him into the jail narcotics concealed in or on his person, in violation of section 4573 of the Penal

---

**2.** The Cahan case was decided after petitioner's trial. This Court does not feel compelled to pass upon the question of the retroactive effect of that case, because, even assuming, *arguendo*, that the Cahan rule was available to petitioner during his trial, the facts of this case do not call for its application.

Code, a felony. He related to the defendant that 'he had reason to believe' he did have possession of narcotics, and the physical examination revealed sufficient circumstances to indicate that such narcotics were concealed in the place where they were found. Under such circumstances a reasonable search of the defendant was authorized." (People v. Woods, 139 Cal.App.2d at pages 524–525, 293 P.2d at page 907.)

 Even though the arrest may be valid, however, the scope and method of search and examination which follows is circumscribed by the standards of reasonableness implicit in the due process clause (See Blackford v. United States, supra). In Blackford, the defendant challenged his conviction of illegally importing and concealing narcotics (21 U.S. C.A. § 174) on the ground that evidence procured from his body, in virtually the same manner in which the evidence was procured from petitioner in the instant case, should have been excluded under the federal exclusionary rule (Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652) implementing the Fourth Amendment, and under the self-incrimination privilege of the Fifth Amendment. In Blackford, as in the instant case, the defendant protested the examination, and resisted the Doctor's efforts to extract the rubber condom. Force was exerted on the person of Blackford to hold him in the appropriate position. Blackford's resistance was so great that the Doctor was unable to reach the package manually, but was required to utilize an anoscope and forceps in order to remove the object, but not without tearing the condom in the process. The Court held that the use of a medically approved procedure administered by a qualified physician, with force applied only after the defendant had demonstrated his refusal to cooperate for his own safety and protection, was reasonable conduct and not within the prohibition of the rule of the Rochin case (Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183), and its stricter implications as applied to federal law enforcement agencies. In Rochin, the defendant's home was invaded, and upon observing what appeared to be an act of swallowing capsules, the police officers attempted by physical force to cause the defendant to choke up the capsules they suspected he had swallowed. Thereafter, he was forcibly taken from his home to a physician who pumped his stomach to recover evidence for the prosecution. The whole course of these proceedings was held to be too outrageous and unreasonable to be consistent with due process of law. In the instant case, as in Blackford, supra, the defendant was not subjected to a course of brutal conduct by the police officers. To the contrary, force was applied only when necessary for the performance of the medical examination. Furthermore, in both the instant case and in Blackford, unlike Rochin, the defendant had been validly arrested prior to any examination, and the officers had far more than a suspicion (in fact, an asserted reasonable belief) that the narcotics were concealed in the place wherein they were found. If judicial sensitivity is to be aroused in the instant case, the source of shock lies not in the efforts of the law enforcement officers, but rather with the deranged conduct of petitioner.

 The use of recognized medical techniques as a protective measure, and as a means of producing evidence, was recently approved in Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L. Ed.2d 448. There the defendant was subjected to a blood test, while he was unconscious, for the purposes of determining the percentage of alcohol in his blood. He was later convicted for involuntary manslaughter, and the results of the blood analysis were used as evidence of intoxication. As against the assertion that the extraction of blood was so brutal and offensive that it "did not comport with traditional ideas of fair play and decency", and thus fell within the prohibition of the Rochin doctrine, the Court stated (352 U.S. at page 435, 77 S.Ct. at page 410):

"Basically the distinction rests on the fact that there is nothing 'bru-

tal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician."

The underlying reasoning of Breithaupt applies with equal vigor to the instant case.

This Court is of the view that petitioner was not subjected to an unreasonable search; that the introduction of the evidence recovered from his body did not taint the fairness of his trial; and that the treatment of petitioner was consistent with the due process clause of the Fourteenth Amendment to the Constitution of the United States.

Petitioner cannot assert the privilege against self-incrimination embodied in the Fifth Amendment of the Federal Constitution as a constitutional right in the state courts. The privilege is not applicable to state prosecutions (Adamson v. California, 332 U.S. 46, 52, 67 S.Ct. 1672, 91 L.Ed. 1903, and cases there collected).

It is, therefore, ordered that respondent's motion to dismiss petitioner's application for a writ of habeas corpus be, and the same is, hereby granted. Let petitioner's application for a writ of habeas corpus be dismissed.