## No. 16,713.

### BLOCK *v.* THE PEOPLE.
(240 P. [2d] 512)

Decided November 19, 1951.   Rehearing denied February 11, 1952.

Mr. FRANCIS P. O'NEILL, Mr. J. CORDER SMITH, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

Mr. CHIEF JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF in error, hereinafter designated as defendant, was convicted of: (1) causing a death by driving an automobile while under the influence of intoxicating liquor and was sentenced to the state penitentiary for a period of not less than five years nor more than ten years; (2) involuntary manslaughter, for which he was sentenced to thirty days in the common jail of Morgan County, Colorado; and (3) reckless driving, for which he likewise was sentenced to thirty days in the common jail of Morgan County. His counsel do not complain of the conviction and sentence under the second and third counts; the assignments of error all relate to the first count.

The evidence disclosed that defendant and his companion Gehrig left Sidney, Nebraska, at about seven o'clock p. m. on the 13th of August, 1950, in a 1949 Chrysler sedan for the purpose of driving to Denver; that defendant had spent a part of the afternoon in a Sidney tavern, and from his and Gehrig's testimony they had had a number of drinks of beer before starting; that they purchased and had with them a full case (24 cans) of beer which they drank as they drove along. The state highway patrolman, who came on the scene shortly after the accident, testified there were twelve unopened cans left in defendant's car. As they were rounding a curve on the highway northeast of Hillrose, Colorado, they col-

lided with a car being driven eastward, as a result of which three persons in the eastbound car were killed and others injured. The collision occurred after dark, and the occupants of two cars traveling westward just prior to the accident—which the car driven by defendant and Gehrig passed—testified that the Chrysler at the time of passing their respective cars was proceeding at a terrific speed. These two cars were among the first to reach the scene of the accident. Defendant was found lying unconscious in the middle of the road, and at first was assumed to be dead by those who were administering first aid to the injured.

One assignment of error relates to the giving of instruction No. 1, being the instruction defining the issues in the case, on the ground that it did not contain a statement as to which defendant was charged as principal and which as accessory. Block and Gehrig were tried jointly and the latter was acquitted, the evidence showing defendant to have been the driver of the car at the time of the collision. In *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5, we held that an accessory may be charged and convicted as a principal. '35 C.S.A., c. 48, §13. We are of the opinion that there was no error in the trial court's refusing to compel the district attorney to elect, before the evidence was presented, as to which defendant was principal and which accessory. Counsel cite no authority to support their contention that the state should be required to elect or advise the jury which of the joint defendants is principal.

Nor do we consider that the court erred in giving instruction No. 3, which is the stock instruction defining a crime. Instruction No. 4 contains the statutory definition of the crime of causing a death by driving an automobile while under the influence of liquor, and we see no error; nor do we find any error in instruction No. 5 containing a definition of intoxication. Neither do we believe there was error in the trial court's refusing an instruction on unavoidable accident tendered by counsel

for defendant, because in the court's instruction No. 12 it expressly stated that defendant's theory of the case is that the accident " * * * was unavoidable. If you find from the evidence that the accident was unavoidable, your verdict must be not guilty." Counsel do not support with any authorities their argument concerning alleged errors in giving or denying instructions, nor at the time of trial was it pointed out in what respect the court erred in its instructions. We therefore accept counsels' statement in their brief that, "There is no question here except that of the violation of his constitutional rights."

On the latter point the evidence disclosed that Block and Gehrig were taken to the hospital at Brush after the accident. During the same evening, under orders from a state officer, samples of blood were taken from both Block and Gehrig. Block still was unconscious at this time and unaware of what was being done. The evidence further showed that the sample of Block's blood so withdrawn was put in a small tube, signed, sealed and placed in a sealed carton which was put in a refrigerator by the medical technologist. Later the sealed carton was taken from the refrigerator and delivered to a state courtesy patrol officer who took it to a technician in the laboratory of the Colorado General Hospital in Denver, where a test was run to determine the percentage of alcohol in the blood contained in the tube. The subsequent testimony of the technician at the trial disclosed that defendant's blood contained 202 miligrams of ethyl alcohol per 100 c. c.'s of blood. The testimony of Dr. Robert M. Hill, director of the chemistry laboratory at Colorado General Hospital, was that a blood alcohol level of over 150 miligrams would impair the judgment very seriously.

The morning following the accident the technician withdrew from the veins of both Block and Gehrig other samples of blood, "for a blood count." She testified that Gehrig said "they were going to see how drunk

they were," whereupon the technician said "I was to see. Is that O. K.?" The defendants made no objection. Counsel contend that the trial court erred in permitting Darlene Bennett, the laboratory technician, to testify to the taking of the blood test, because she was in a confidential relationship with defendant "and he had not waived in any respect the privilege of such relationship." Our statute relating to privileged communications, '35 C.S.A., volume 4, chapter 177, section 9, is clearly not applicable to the present case, as it does not include a nurse or medical technician. We held in *Hanlon v. Woodhouse,* 113 Colo. 504, 160 P. (2d) 998, that a doctor in a hospital, who took a blood sample at the request of a public officer, and who was not consulted by the person whose blood was withdrawn and who did not prescribe for him or accept pay from him, did not stand in such a confidential relation as to make his communications privileged.

In *Kirschwing v. Farrar,* 114 Colo. 421, 166 P. (2d) 154, we held evidence of a blood alcohol test admissible where the blood was withdrawn from one who was unconscious.

Neither of the foregoing cases, however, was a criminal action, and in neither was a challenge made to the introduction of evidence concerning a blood alcohol test on constitutional grounds. Defendant's fourth assignment of error raises for the first time in this court this constitutional question, and his counsel allege that defendant was required to give evidence against himself by the admission of the results of a test of his blood to determine the alcoholic content.

Section 18, Article II of the Colorado Constitution, upon which defendant relies, reads as follows: "No person shall be compelled to testify against himself in a criminal case. * * * "

Counsel for defendant lay stress on the following statement in *Tuttle v. People,* 33 Colo. 243, 255, 79 Pac. 1035, 1039; 70 L.R.A. 33, "The constitutional provision

was not intended to merely protect a party from being compelled to make confessions of guilt, but protects him from being compelled to furnish a single link in a chain of evidence by which his conviction of a criminal offense might be secured." It is argued that the implications in that pronouncement would bar the admission of the results of the blood alcohol test. That case, however, dealt with the question as to whether statements made at a coroner's inquest were admissible in evidence against the person making them in a subsequent prosecution for the homicide, and it was held that if they were not voluntary, or if obtained by any degree of coercion, they must be rejected. This case, then, is authority only as to the type of statements by a defendant that are admissible. That this case was so limited as to matters to which a defendant can be compelled to testify seems evident, when it is noted that the two cases which Mr. Chief Justice Gabbert cites in the Tuttle case, as authority for the above quoted portion of his opinion, also deal with testimonial evidence. One case, *State v. Spier*, 86 N. C. 600, involved the question of the admission of *oral* testimony of a defendant given at a preliminary investigation. That case in turn is founded upon four earlier North Carolina cases which also dealt with *verbal* testimony. The second case upon which Mr. Chief Justice Gabbert relied was *State ex rel. v. Simmons Hardware Co.*, 109 Mo. 118, 18 S.W. 1125, 15 L.R.A. 676. It also is limited to matters of a *testimonial* nature, and from that opinion we observe that the author credits Wharton on Evidence, vol. 1, section 536, as authority for the quoted portion of *Tuttle v. People, supra*. There, also, the statement applies to questions asked and answers demanded of a witness.

Counsel for defendant cite no Colorado case where evidence other than testimonial has been barred because it might be incriminating. In *Ingles v. People*, 92 Colo. 518, 22 P. (2d) 1109, we held that compelling one who has pleaded not guilty by reason of insanity to undergo

examination, both mental and physical, does not constitute compulsory self incrimination. So, in this state, the distinction between the admission in evidence of a physical fact concerning the defendant in a criminal case, as distinguished from the matters to which a defendant can be relieved from *testifying,* already has begun to emerge. It would seem to be a proper distinction.

A study of the history of the development of such a constitutional provision as contained in our Colorado Constitution indicates that the original intent was to prevent a defendant from being forced to give testimonial evidence against himself, and did not contemplate the exclusion of evidence of physical facts relating to the defendant. 8 Wigmore on Evidence (3d ed.), p. 276, §2250. This line of demarcation is clearly set forth in Mr. Justice Holmes' opinion in *Holt v. United States,* 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, as follows: "Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. Moreover, we need not consider how far a court would go in compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent. *Adams v. New York,* 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575."

*Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, relied upon by counsel for defendant, ante-

dates the Holt case and must be considered to have been either overruled by the latter or have a dissimilar set of facts making it not pertinent. The rule in *Holt v. U. S., supra,* seems to be still in effect, having been neither modified nor overruled. That case is especially interesting because of the fact that duress was present in the two situations that are to be distinguished in the instant case. The statements of the prisoner made under duress were held to be clearly inadmissible under the Fifth Amendment, but not so the evidence regarding the physical facts of the blouse fitting the prisoner, even though the trying on of the garment occurred also under duress.

In the recent case of *State v. Cram,* 176 Ore. 577, 160 P. (2d) 283, 164 A.L.R. 952, involving a somewhat similar set of facts to those in the instant case, the author of the majority opinion, after an extended consideration of the various cases and after referring to *Holt v. United States, supra,* states:

"The defendant was not deprived of any of his constitutional rights by the admission of the testimony here in question. He was not compelled to testify against himself. Evidence of the result of the analysis of the blood sample was not his testimony but that of Dr. Beeman, distinct from anything the defendant may have said or done. The blood sample was obtained without the use of any process against him as a witness. He was not required to establish the authenticity, identity or origin of the blood; those facts were proved by other witnesses.

"If the evidence here under attack is inadmissible, it is difficult to understand under what theory fingerprints procured under compulsion, or evidence concerning them, is admissible. It is equally difficult to comprehend why the defendant is not denied his constitutional privilege against self-crimination by being required to do the many acts hereinbefore enumerated."

In *Lewis v. People,* 115 Colo. 434, 174 P. (2d) 736, we

affirmed the judgment of conviction in which defendant was partially identified by the prosecuting witness by listening to his voice while he was under arrest at the police station. Her testimony was to the effect that it was the same voice that she had heard over the telephone several times when an unidentified man called her.

In the annotation in 164 A.L.R., following *State v. Cram, supra,* the writer discusses the position taken by the various jurisdictions on this question, indicating that the majority rule recognizes the distinction between a defendant being compelled to testify against himself and evidence concerning his physical condition, a distinction that has been expressed on the philosophical side by Emerson in his essay on "Character" when he said, "What that man is makes so much noise that I cannot hear what he says." The purpose of the amendment against self incrimination is to prevent a man from being compelled to utter words that will incriminate him, and not to obliterate all evidence of physical facts showing who and in what condition he is.

The judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE MOORE dissenting on Petition for Rehearing.

For reasons discussed in *Rochin v. California,* decided by the Supreme Court of the United States on January 2, 1952, it is my opinion that the admission of evidence relating to a chemical analysis for alcohol content in a sample of blood withdrawn from the veins of defendant was reversible error.

Accordingly I respectfully dissent.