[Crim. No. 5569.   Second Dist., Div. Two.   June 15, 1956.]

THE PEOPLE, Respondent, v. WALTER HARRY
SMITH, Appellant.

A. H. McConnell, Simon & McKinsey and Harry J. Simon for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of burglary in the second degree, appellant demands a reversal of the judgment and the order denying his motion for a new trial. He maintains: The evidence is insufficient to support the verdict; prejudicial errors were committed in overruling his objections to the testimony of a chemist; certain photographs of his body were obtained in violation of the 4th and 14th Amendments to the Federal Constitution, and the Constitution of California (art. I, § 19); errors in instructions.

### The Evidence, Sufficient

About 2:30 a. m. April 12, 1955, Officers Robertson and Miller of the Long Beach Police Department while cruising along Second Street heard falling glass on the premises of Miller Rental Company and observed a woman standing nearby. She ran south, then east through an alley, but was soon overtaken by Officer Robertson near a construction shack. The patrol car then arrived and the officers ascertained that the woman was Mildred Elizabeth Anthony, the codefendant of appellant, and had her enter their automobile. On returning to the building with the broken window pane, they observed a jagged piece of glass protruding upward and stained with a bloodlike substance. It was also on the wood of the door. After checking the building, the officers observed a 1951 Mercury automobile with its license plates so

turned down as to obscure the number. It was registered to Felix Smith, brother of appellant. On its front seat the officers found a hammer of appellant and a blue leather purse containing the driver's license of Mrs. Anthony. On the purse was a napkin with dark brown stains. A closer inspection of the young woman revealed that she was bleeding from her left forefinger and her right ankle. She denied having broken the window and that the purse in the Mercury or the driver's license was hers, but asserted that she was Mildred Smith. Officer Miller had in the meantime inspected the area of the construction shack where he found a pair of lady's black leather gloves. The left glove had a hole in the seam of the left index finger on the thumb side and the part around the hole was damp with fresh blood. Mrs. Anthony denied ownership of the cut, bloodstained merchandise.

While the foregoing inspections and conversations were in progress, Mr. Miller, proprietor of the rental company arrived, examined the inside of his building and boarded the broken door inside. At 6 a. m. Miller returned to his office at the police officers' request, found the boards had been taken from the door and lay on the floor inside. Also, he discovered that a small muffin tin with five dollars in coin was gone from its place beneath the counter on the rental side of the room. The other side contained marine hardware and supplies. The two entrances at the front were so locked as to be opened on the outside only. The third entrance is on the side of the building where the pane was broken. Mr. Miller only had keys to the front doors.

Inspector Perle, observed a triangular mark at the base of the side door. It looked like moist blood. Technician Dillon of the Long Beach Police Department lifted latent finger prints from the triangular mark. They were found to be identical with the impression of appellant's hand. The inspector found also two Philip Morris cigarette butts on the rug. Appellant smokes that make of cigarette. Officer Dillon also took prints from a 2-foot pine board found on the floor near the west door. They were the same as the impressions of appellant's middle, and little fingers. Pieces of plaster, broken from the wall board in the Miller office by the laboratory technician, were found to contain blood.

About 10 a. m. of the same day, Detective Parris and Officer Wishon called at appellant's apartment and were admitted. They examined him for scars and told him his car had

been involved in a burglary. After some conversation on the subject, they told him that if he would come down to the Vehicle Department at the city hall, the officers would give him an order for the Mercury. He then explained that the reason the car was in his brother's name was that he, appellant, had planned to go overseas with the Brown Drilling Company. When he called in a Ford convertible to get the Mercury, he was arrested. Evidently, the officers had concluded that he was a participant in the burglary. Thereupon, Officer Parris with the consent of appellant's wife took from the convertible a pair of trousers and a shirt in a box in the rear seat. They belonged to appellant. From the cuffs of the trousers, Officer Simonds took fragments of glass, and residual material from the shirt, and found blood stains on both garments. He opined that the fibers taken from the shirt were the same as the rug fibers taken from the Miller rug and the particles removed from the trouser cuff were the same as the plaster taken from the wall board in the Miller office and that the brown substance on a particle of plaster removed from the Miller Rental Office was blood stain. After the arrest, Officer Parris noticed fresh, slight cuts on appellant's right palm and right shoulder.

Appellant contends that such evidence is insufficient to support the judgment. He argues first that where circumstances that are relied upon as proof of guilt are equally compatible with innocence as with guilt, there is a failure of proof, citing *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]. That is but a small part of the holdings of that decision. The paramount feature of the Newland case is the announcement that on an appeal based upon the insufficiency of the evidence, before the verdict can be upset "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland, supra,* p. 681.) ■ Under that authority, so long as there is substantial evidence, circumstantial or direct, undenied or contradicted, the reviewing court will not reverse a judgment merely because what might be deemed equally convincing evidence has been introduced at the trial on behalf of appellant. The fact that appellant explained the presence of blood on his clothes by his story of a fight near Wander Inn when he suffered a bloody nose; that the shirt and trousers in evidence are the same he wore in that fight; that he was cor-

roborated by two persons who witnessed the fight—despite such testimony, the jury was not compelled to accept it rather than the recital of the circumstances heretofore related. Neither were the jurors compelled to accept the eloquent alibi of appellant or its cordial support by his wife who testified she was at home with her husband at the very time the Miller office was burglarized. The jury rejected the evidence presented on behalf of appellant, adopted that presented by the People and determined that he had committed the burglary. Therefore, in the absence of prejudicial error during the trial of the action, the judgment is secure.

### Rulings on the Admissibility of Evidence

■ The People called Officer Simonds for opinion testimony involving learning and experience in chemistry. The basis of appellant's objection to such testimony was that Mr. Simonds held no university degree in that science. The objection was properly overruled. The witness had held the position of laboratory technician for the past 16 years; had studied in two midwestern universities and in two California universities; had studied the use of comparative microscopes, various substances and their composition with animal and vegetable and chemical compounds and most all the fields of chemistry and physics, had, after completing his course, taken one year in medical school. ■ Opinions as to fibers taken from appellant's clothing and from the rug at the scene of the crime are beyond the ken of jurors having only common knowledge and are therefore properly heard from experts only. (*People* v. *Lovren,* 119 Cal. 88, 91 [51 P. 22, 638].)

■ As one skilled in the use of microscopes and learned in the science of chemistry, Officer Simonds was correctly permitted to testify that the brown splotches on the clothing of appellant as well as on that of Mrs. Anthony were blood and that fibers on appellant's clothing were the same as those that came from the rug in Miller's rental office. (Code Civ. Proc., § 1870, subdivision 9.) ■ The determination of an expert's qualification to testify as to matters relating to his specialty is primarily the function of the trial court and its ruling will not be disturbed in the absence of an abuse of discretion. (*People* v. *Horowitz,* 70 Cal.App.2d 675, 689 [161 P.2d 833]; *People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771].) Where an officer had had many years' experience in investigating traffic accidents and reporting their causes, his opinion based on skid and gouge marks on the pavement and on the location of oil, broken glass and parts was ad-

missible. (*People* v. *Haeussler,* 41 Cal.2d 252, 261 [260 P.2d 8].) ■ A university degree, earned by scientific pursuits, is helpful, but it is not indispensable to the qualification of an expert to testify on subjects in the field of his specialty.

■ After appellant's arrest, the officers took photographs to show the scars on his body. Objection to their receipt in evidence was made on the ground that "under the Cahan case they were illegally obtained without a search warrant." Appellant now urges the court's ruling was prejudicial and recounts that appellant was arrested, taken to the crime laboratory and there commanded to disrobe against his will, and without his consent his body was photographed for scars. He cites *People* v. *Irvine,* 347 U.S. 128, 132 [74 S.Ct. 381, 98 L.Ed. 561]; *Rochin* v. *California,* 342 U.S. 165, 174 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396] and *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], in support of his contention that the admission of such photographs of his body was illegal and prejudicial. There is no evidence that the photographs were obtained by the exertion of "brutal or shocking force" as in the case of Rochin. The body of appellant was photographed after he had been arrested and in a manner compatible with a proper administration of law. When a culprit has been justifiably arrested for a felony, he can not expect to have the red carpet rolled out for his reception. It is the duty of law-enforcing agencies, after such arrest, to explore every area suggested by the circumstances of the apprehension of the accused to the end that if the latter is probably guilty, the evidence will have been so assorted and systematized as to expedite judicial procedure, and if the evidence should not in the opinion of the People's counsel warrant a trial, the accused will be promptly discharged.

Appellant was examined and the photographs were taken at three p. m., in the crime laboratory of the Long Beach Police in the presence of Officer Beck, Inspectors Parris and Wishon and the technicians. The photographs were taken while the accused was under questioning concerning his bloody shirts. There was nothing brutal or shocking in such procedure. (See *Rochin* v. *California, supra,* p. 172.) It was not offensive to the fundamental constitutional guaranties against abridgment of the due process clause. (See *Snyder* v. *Massachusetts,* 291 U.S. 97, 105 [54 S.Ct. 330, 78 L.Ed.

674, 90 A.L.R. 575]; *People* v. *Haeussler, supra.*) After the officers had already obtained evidence of appellant's probably having participated in a burglary, where the burglar had left his blood in the enclosure and blood was on the clothing of appellant, it was not an unreasonable search of the latter to inspect his clothing or his body. ▪ Since no claim is asserted that the arrest was unlawful, it is a fair conclusion that the search was valid (*People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40]), for where there is reasonable cause for the arrest, search is proper before or after. (*People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531].) It follows that inasmuch as appellant had been lawfully arrested, the search of his person was reasonable. (*People* v. *Haeussler, supra*; *People* v. *Woods*, 139 Cal.App.2d 515 [293 P.2d 901].)

INSTRUCTIONS NOT PREJUDICIAL

▪ Appellant complains of the following instruction: "All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof."

Appellant deems himself to have been aggrieved by the phrase: "whether present or not." He says: Since Mrs. Anthony had the keys to appellant's car and his hammer was in it at the time of the burglary, the jury might have concluded that even though Smith was not present, he advised defendant Anthony to commit the crime.

▪ It is the law that an instruction is proper when it is consistent with any reasonable inferences the jury might have drawn. (*People* v. *Latona*, 2 Cal.2d 714, 725 [43 P.2d 260]; *People* v. *Perkins*, 75 Cal.App.2d 875, 880 [171 P.2d 919.]

▪ The court properly performs its constitutional functions when it instructs the jury upon any material question upon which any substantial evidence has been introduced whether it was direct and positive or merely circumstantial. (*People* v. *Perkins, supra.*) ▪ Certainly, if from the evidence, the jury could have inferred that appellant advised Mrs. Anthony to burglarize the office of Miller Rental Company, under the cited authorities, the instruction was proper. *People* v. *Fremont*, 22 Cal.App.2d 292 [70 P.2d 1005], is not applicable. That judgment was reversed because the

testimony of the prosecutrix was not credible and the evidence was not sufficient.

Appellant criticizes the following instruction:

"Evidence, if any, that defendant, on one or more occasions other than from the witness stand, made false, contradictory or misleading statements concerning the charge against him which now is being tried (or that he endeavored to procure false or fabricated evidence to be produced at the trial) may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance, and the significance, if any, to be attached to it, are matters for the jury to determine."

The giving of that instruction was unfortunate. The fact that appellant offered his alibi, testified in support of it and called witnesses in support thereof is not such behavior as would justify the instruction. To justify such an instruction, the defendant must be guilty of having made some positive attempt to mislead the jury with reference to the act of which he was accused.

Withal, however, the instruction was not prejudicial and the technical error does not warrant a reversal. (Const., art. VI, § 4½.)

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 11, 1956.