328 P.2d 1065

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Vondell A. BOCK, Defendant-Appellant.**

No. 8535.

Supreme Court of Idaho.

July 30, 1958.

Graydon W. Smith, Atty. Gen., J. R. Smead, Asst. Atty. Gen., James W. Ingalls, Pros. Atty., Coeur d'Alene, for respondent.

Pat W. Arney, Coeur d'Alene, LeRoy C. Kinnie, Spokane, Wash., for appellant.

TAYLOR, Justice.

September 18, 1955, at approximately 9:30 p. m., while driving north on state highway 41, in Kootenai county, defendant (appellant) lost control of his car and it left the highway, injuring appellant and a passenger, Mrs. Dellene D. Louden. Appellant and Mrs. Louden were taken to a hospital in Coeur d'Alene, where Mrs. Louden died the next day without regaining consciousness.

Appellant was belligerent, uncooperative, and refused aid, both at the scene of the accident and at the hospital. At the hospital appellant was asked by the laboratory technician, a police officer, and a physician, if he would submit to a blood alcohol test. This he refused. The officer delivered to appellant a citation, charging him with reckless driving and left him at the hospital. He was allowed to return to his home in Spokane. There he was taken to a hospital because of pain, and it was discovered by X-ray that he suffered three broken ribs and a punctured lung. Shortly thereafter, appellant was arrested, charged with the crime of involuntary manslaughter, and placed in the Lake City General Hospital in Coeur d'Alene, in Kootenai county, for a period of seven days.

Trial commenced December 5, 1956. Prior thereto appellant moved to suppress all evidence of his refusal to submit to a blood alcohol test, on the grounds, among others, that such evidence was incompetent and would violate his constitutional privilege against self-incrimination. This motion was denied. At the opening of the trial, before the introduction of evidence, the motion was renewed on the additional ground that the request having been made prior to arrest was unlawful; that defend-

ant had the right to refuse; and that the request violated his constitutional right of due process. Upon the trial the hospital technician, police officer, and physician, over appellant's objection, were permitted to testify to his refusal to submit to the test. These rulings are assigned as error.

Section 49–1102, I.C., [1953, Ch. 273, § 54, p. 478] makes it unlawful to drive a vehicle while under the influence of intoxicating liquor, provides the punishment therefor, and sets forth the presumptions which shall arise from the various percentages of alcohol in the blood of the defendant, as shown by chemical analysis of his blood, urine, breath or other bodily substance.

In 1955 the present section 49–352 was enacted as follows:

"Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine or saliva for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition and in accordance with the rules and regulations established by the police force of which he is a member. If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license or permit to drive and any nonresident operating privilege; provided, however, the commissioner shall grant such person an opportunity to be heard but a license, permit or nonresident operating privilege may, upon the basis of a sworn report of the police officer that he had reasonable grounds to believe such arrested person to have been driving in an intoxicated condition and that said person had refused to submit to such test be temporarily suspended without notice pending the determination upon any such hearing. The provisions of section(s) 49–329 and 49–330 Idaho Code shall be applicable to revocations under this section."

■ The respondent, State of Idaho, urges that § 49–352 is applicable only to actions brought under § 49–1102 involving the charge of driving while under the influence of intoxicating liquor, and that it is not applicable in a manslaughter case where intoxication of the driver is charged only as descriptive of the manner and means by which the crime was committed. We do not agree that the 1955 act is to be so narrowly applied. Nothing in its terms indicates such a limitation upon its application. Sections 49–329 and 49–330, referred to

therein, providing authority and procedure for revocation and suspension of drivers' licenses and permits, would authorize action by the commissioner in a case where homicide is also involved.

The provisions of the 4th and 5th amendments to the Constitution of the United States affording protection against unreasonable searches and seizures and self-incrimination are not applicable to proceedings in the state courts. Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97; Adamson v. People of State of California, 1947, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903. However, we have the identical provisions in our state constitution, Art. 1, §§ 13 and 17.

The provisions of § 13 that "No person shall * * * be compelled in any criminal case to be a witness against himself", and of § 17 "against unreasonable searches and seizures", are applicable only to testimonial compulsion and do not apply to "real" evidence produced by a reasonable examination of the body of the accused, or a reasonable search and seizure of his person and effects. State v. Ayres, 70 Idaho 18, 211 P.2d 142; State v. Linebarger, 71 Idaho 255, 232 P.2d 669; State v. Cram, 1945, 176 Or. 577, 160 P.2d 283, 164 A.L.R. 952; People v. One 1941 Mercury Sedan, 1946, 74 Cal.App.2d 199, 168 P.2d 443, hearing denied; People v. Tucker, hearing de-

nied, 1948, 88 Cal.App.2d 333, 198 P.2d 941; Block v. People, 125 Colo. 36, 240 P.2d 512; Kallnbach v. People, 1952, 125 Colo. 144, 242 P.2d 222; People v. Haeussler, 1953, 41 Cal.2d 252, 260 P.2d 8; People v. Caritativo, 46 Cal.2d 68, 292 P.2d 513; People v. Smith, 142 Cal.App.2d 287, 298 P.2d 540; Vigil v. People, 134 Colo. 126, 300 P.2d 545; Barnhart v. State, Okl.Cr., 302 P.2d 793; Alexander v. State, Okl.Cr., 305 P.2d 572; People v. Duroncelay, 48 Cal.2d 766, 312 P.2d 690; People v. McDaniel, Cal.App., 321 P.2d 497, hearing denied; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; Green Lake County v. Domes, 247 Wis. 90, 18 N.W.2d 348, 159 A.L.R. 204; State v. Severson, N.D.1956, 75 N.W.2d 316; State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265; Ash v. State, 1940, 139 Tex.Cr.R. 420, 141 S.W.2d 341; State v. Green, 227 S.C. 1, 86 S.E.2d 598; State v. Smith, 1956, 230 S.C. 164, 94 S.E.2d 886; Schutt v. Macduff, 1954, 205 Misc. 43, 127 N.Y.S.2d 116; Blackford v. United States, 9 Cir., 1957, 247 F.2d 745; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; Breithaupt v. Abram, 1957, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448; People v. Woods, 1957, 139 Cal.App.2d 515, 293 P.2d 901, certiorari denied 352 U.S. 1006, 77 S.Ct. 566, 1 L.Ed.2d 550; VIII Wigmore on Evidence, 3rd Ed., §§ 2263, 2265; Annotations, 127 A.L.R. 1513; 159 A.L.R. 209; 164 A.L.R. 967; 18 A.L.R.2d 796; 25 A.L.R.2d 1407.

In Holt v. United States, supra, a murder case decided in 1910, Justice Holmes said:

"Another objection is based upon an extravagant extension of the 5th Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." 218 U.S. at page 252, 31 S.Ct. at page 6, 54 L.Ed. at page 1030.

In Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 210, 96 L.Ed. 183, 25 A.L.R.2d 1396, the police illegally entered the defendant's house and, seeing him place capsules in his mouth, tried to forcibly extract them therefrom. The capsules being swallowed in the struggle, the defendant was handcuffed and taken to the hospital where the capsules, found to contain morphine, were forcibly taken from his stomach. The court held the methods used were so "close to the rack and screw" and so offensive to a "sense of justice" as to be a violation of due process under the 14th amendment.

In 1957 the question was again before the Supreme Court in Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448. The defendant was convicted in a state court of manslaughter, resulting from driving a car while intoxicated. He did not appeal, but applied to the Supreme Court of New Mexico for a writ of habeas corpus, claiming that his conviction was procured by evidence from an involuntary blood test, and thus he was deprived of his liberty without the due process of law guaranteed by the 14th amendment. The Supreme Court of New Mexico denied the writ and the petitioner appealed to the United States Supreme Court. In affirming the state court, Justice Clark, speaking for the majority, said:

"Basically the distinction rests on the fact that there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician. To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole com-

munity sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life." 352 U.S. at page 435, 77 S.Ct. at page 410, 1 L.Ed.2d at page 451.

"As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road." 352 U.S. at page 439, 77 S.Ct. at page 412, 1 L.Ed.2d at page 453.

In Ash v. State, 139 Tex.Cr.R. 420, 141 S.W.2d 341, officers observed defendant place some metallic objects in his mouth and swallow them. They believed the objects to be stolen rings. The defendant was taken to a hospital; after the lapse of some time, the rings were located in his lower bowel by fluoroscope and were removed by means of enema. This was all done by force and against the will of accused. The court observed that there was no cruel or inhuman treatment of the defendant, and held that the search was a lawful incident to his arrest; the evidence was admissible; and that the act of the defendant in resisting the efforts of the officers to recover the rings was proper evidence indicating guilt.

In Alexander v. State, Okl.Cr., 305 P.2d 572, the defendant was charged with driving while intoxicated. After arrest she was put through certain tests—walking a line, picking up coins, and breathing into a balloon for a drunkometer test. While defendant did not consent and the tests were required of her, no physical force was used. The court held that the results of the tests were admissible and not violative of the privilege against self-incrimination. After making the distinction between real and testimonial evidence in respect to compulsion, the court said:

"We have determined that the physical or real evidence in question and obtained by the officers was in effect by coercion, but it should be emphasized that no physical force was used, or threats made, nor was brutality involved so as to bring the case within the prohibition of Rochin v. People of California, supra. And as said in Davis v. State, Md., supra [189 Md. 640, 57 A.2d 289], we think there is no substantial difference between obtaining a specimen of blood or breath from an accused, under ordinary circumstances, and obtaining fingerprints or physical property, the possession of which is a pertinent issue in the charge against him." 305 P.2d at page 584.

In Block v. People, 125 Colo. 36, 240 P.2d 512, the court held that the admission of evidence of the result of a test of blood taken from defendant while he was unconscious did not violate the privilege against self-incrimination.

In People v. Haeussler, 41 Cal.2d 252, 260 P.2d 8, the California Supreme Court held that the results of a test of blood taken from the defendant while unconscious was admissible, and was neither a violation of her privilege against self-incrimination nor a denial of due process.

In People v. Duroncelay, 48 Cal.2d 766, 312 P.2d 690, the charge was injury to a person in driving while intoxicated. Blood was taken from the defendant without his consent and prior to his arrest, but after the officer had found him in his wrecked car with an injured companion and with visible evidence of intoxication, so that an arrest at that time would have been authorized by the statute and lawful. The court held that the evidence of the blood test was not testimonial compulsion, but was "real" evidence and did not violate the privilege against self-incrimination, and that the blood having been drawn by a registered nurse, its taking was not denial of due process. Concerning the arrest the court said:

"It is obvious from the evidence that, before the blood sample was taken at the request of the highway patrolman, there was reasonable cause to believe that defendant had committed the felony of which he was convicted, and he could have been lawfully arrested at that time. Pen.Code § 836. There is no claim that defendant was not arrested within a reasonable time or that the arrest was not made on the basis of the facts known to the officer who investigated the accident, * * *." 312 P.2d at page 693.

Penal Code, § 836 of California is the same as our § 19-603, I.C., governing arrest.

State v. Cram, 1945, 176 Or. 577, 160 P.2d 283, 164 A.L.R. 952, was a manslaughter case arising out of driving while intoxicated. The result of a test of defendant's blood taken while he was unconscious was admitted in evidence. The court held the evidence was not testimonial compulsion from the accused, and did not violate his constitutional privilege against self-incrimination.

Referring to the privilege against self-incrimination, Professor Wigmore, in his work on Evidence, says:

"Looking back at the history of the privilege (*ante*, § 2250) and the spirit of the struggle by which its establishment came about, the object of the protection seems plain. It is the employment of legal process to *extract from the person's own lips* an admission of

his guilt, which will thus take the place of other evidence. * * *

\* \* \* \* \* \*

"In other words, it is not merely any and every compulsion that is the kernel of the privilege, in history and in the constitutional definitions, but *testimonial compulsion.* The one idea is as essential as the other.

"The general principle, therefore, in regard to the form of the protected disclosure, may be said to be this: The privilege protects a person from any disclosure *sought by legal process against him as a witness.*" VIII Wigmore on Evidence, 3rd Ed., § 2263, pp. 362–363.

The American Law Institute, in its Model Code of Evidence, Ch. 3, p. 136, sets forth as rule 205, the following:

"Rule 205. Self-Incrimination; Bodily Examination.

"No person has a privilege under Rule 203 to refuse

"(a) to submit his body to examination for the purpose of discovering or recording his corporal features and other identifying characteristics, or his physical or mental condition, or

"(b) to furnish or to permit the taking of samples of body fluids or substances for analysis."

In the annotation to Rochin v. People of California, supra, in 25 A.L.R.2d at page 1408, the annotator says:

"Most of the cases decided since the publication of the annotation in 164 ALR, applying general principles there stated and discussed, have held that the accused in a criminal case suffered no deprivation of constitutional rights through the use against him of evidence obtained by means of compulsory physical examinations or tests."

Greenleaf in his work on evidence says:

"The scope of the privilege, in history and in principle, includes only the process of testifying, by word of mouth or in writing, i. e. the process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the witness' body or about his person. The privilege does not rest on the extreme notion that a guilty person is entitled to conceal as much as he can of the evidence of his crime; but on the notion that he should not be made to confess it out of his own mouth. Nevertheless, in the last generation a false and sentimental tenderness for the guilty accused has created a tendency in some quarters to extend the privilege in ways unimagined by those who laid its foundations; and the question is now often raised whether the privilege does not protect an accused per-

son from the inspection or search or exhibition of his person. In the great majority of jurisdictions this extension has received no sanction * * *." 1 Greenleaf on Evidence, 16th Ed., § 469e.

■ We conclude that where intoxication is an evidentiary element of "reckless disregard" in a homicide case arising out of the operation of a motor vehicle, the accused has no constitutional right to refuse to submit to a reasonable search and examination of his person, including an examination of his blood in the manner authorized by law.

The question remains as to the effect of the statute, granting to the defendant the right to refuse to submit to a blood test, on the question of the admissibility in evidence of the fact of his refusal. In the following cases the refusal to submit to the test was held admissible: State v. Smith, 1956, 230 S.C. 164, 94 S.E.2d 886; State v. Gatton, 60 Ohio App. 192, 20 N.E. 2d 265; State v. Benson, 230 Iowa 1168, 300 N.W. 275; State v. Nutt, 78 Ohio App. 336, 65 N.E.2d 675 (refusal to give sample of urine); People v. McGinnis, 123 Cal. App.2d Supp. 945, 267 P.2d 458.

In State v. Gatton, supra, the court said:

"There has been an increasing tendency in recent years upon the part of courts of many jurisdictions to extend the scope of the self-crimination constitutional provisions to entirely unwarranted lengths. Modern-day transportation, which enables criminals to travel with great rapidity from one part of a state to another, or from one state to another state, together with improvements in lethal instruments, has made the path of the law-enforcement officer exceedingly rough; and it seems to the members of this court to be high time to discontinue such an attitude toward those accused of criminal offenses, and to secure to them such rights as are clearly guaranteed by constitutional provisions, but no more. Maudlin sentimentality in favor of those accused of crime should not be encouraged." 20 N.E.2d 265, at pages 266–267.

In State v. Benson, supra [230 Iowa 1168, 300 N.W. 277], the Iowa court cited State v. Gatton and said:

"It is proper to show the defendant's conduct, demeanor and statements (not merely self-serving), whether oral or written, his attitude and relations toward the crime, if there was one. There are circumstances that may be shown. Their weight is for the jury to determine. The fact that defendant declined to submit to a blood test is such a circumstance. It may be shown. The jury may consider it. The evidence was admissible." 300 N.W. 275, at page 277.

We observe, however, that in none of the foregoing cases approving the admission of evidence of refusal to take the test, was a statute granting the right of refusal considered.

■ This court has long held that the acts and conduct, declarations, statements, and admissions of the accused, before, at the time of, or subsequent to arrest, when not the result of unconstitutional coercion, are admissible in evidence against him. State v. Baird, 13 Idaho 29, 88 P. 233; State v. Marren, 17 Idaho 766, 107 P. 993; State v. Sullivan, 34 Idaho 68, 199 P. 647, 17 A.L.R. 902; State v. Poynter, 34 Idaho 504, 507, 205 P. 561, 208 P. 871; State v. Boykin, 40 Idaho 536, 234 P. 157; State v. Bush, 50 Idaho 166, 295 P. 432; State v. Hargraves, 62 Idaho 8, 107 P.2d 854; State v. Mundell, 66 Idaho 297, 158 P.2d 818; State v. Constanzo, 76 Idaho 19, 276 P.2d 959.

■ It has also long been the rule in this state that admissions of the accused whether made before or after arrest are admissible without a preliminary showing that they were voluntarily made. State v. Garney, 45 Idaho 768, 265 P. 668; State v. Wilson, 51 Idaho 659, 9 P.2d 497; State v. McDermott, 52 Idaho 602, 17 P.2d 343; State v. Campbell, 70 Idaho 408, 219 P.2d 956; State v. Cofer, 73 Idaho 181, 249 P.2d 197; State v. Johnson, 74 Idaho 269, 261 P.2d 638.

"Appellant alleges error in admission of the testimony of the Chief of Detectives that appellant shortly after the telephone conversation, 'said that he didn't have an account in the bank in Portland,' on the ground that the state did not first show that such statement was free and voluntary. Such statement was not a formal confession but was an admission against interest. It was not necessary, before such testimony was admissible, for the state to show that the statement was free and voluntary and made without fear, intimidation or promise of benefit." State v. Campbell, 70 Idaho 408, at page 416, 219 P.2d 956, at page 961.

"Statements or declarations of a party accused of crime, which do not amount to a confession but from which, in connection with other evidence, an inference of guilt may be drawn, are admissible in evidence against the accused." State v. Cofer, 73 Idaho 181, at pages 188–189, 249 P.2d 197, at page 201.

"Statements of declarations of one accused of a crime, voluntarily made, from which, in connection with other evidence an inference of guilt may be drawn, are admissible in evidence against him. * * *

"In the case before us, appellant went voluntarily to the police station.

Prior to that time he had not been arrested. Whether or not he was actually in custody at the time of the conversation had with the police officers, is of no importance. In either event, such statements so voluntarily made were proper evidence." State v. Johnson, 74 Idaho 269, at page 277, 261 P.2d 638, at page 642.

"Any admission of accused, whenever made, which tends to show his connection with the crime charged in the indictment, is admissible against him; and admissions are not limited to statements made at the time and place of the crime, but may include statements made either before or after the date of the offense charged, provided they are not too remote in point of time." 22 C.J.S. Criminal Law § 730, p. 1247.

In the following cases the courts held evidence of defendant's refusal to submit to an alcohol test was not admissible: Duckworth v. State, Okl.Cr.1957, 309 P.2d 1103; State v. Severson, N.D.1956, 75 N.W.2d 316; People v. Stratton, 1955, 286 App.Div. 323, 143 N.Y.S.2d 362.

The New York case (Stratton) in part is based on the rule against self-incrimination as applied in that state. The opinion is from the appellate division of the Supreme Court, not from the Court of Appeals, and, therefore, does not necessarily settle the issue in that state.

In the Severson case [75 N.W.2d 317] the North Dakota court held the statute providing "no defendant shall be required to submit to any chemical test without his consent", NDRC 1953 Supp. 39–0801, implies that evidence of the results of such test may not be admitted unless defendant consented to the test. From this premise the court reasons that "where the defendant has not testified" it is also to be implied that his refusal may not be received in evidence against him. Our statute is different. By operating a motor vehicle in this state the defendant is "deemed to have given his consent to a chemical test". The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made.

In the Duckworth case the Oklahoma court bases its decision on the statute (22 O.S.1951 § 701) which provides that defendant is a competent witness [309 P.2d 1105] "at his own request, but not otherwise" and "his failure to make such request shall not create any presumption against him nor be mentioned on the trial". That statute is similar in effect to our § 19–3003, I.C., which provides:

"A defendant in a criminal action or proceeding to which he is a party, is not, without his consent, a competent witness for or against himself. His neglect or refusal to give such consent

shall not in any manner prejudice him nor be used against him on the trial or proceeding."

Obviously this statute deals only with the right of the defendant to choose whether or not he shall become a witness. It seeks to protect the privilege of the defendant against self-incrimination. Like the constitutional provision above discussed, it has its roots in the common-law (22 C.J.S. Criminal Law § 649). Like the constitutional provision it has no application to the competency or admissibility of evidence procured by a reasonable search or examination of the person, nor to evidence of the conduct, declarations or admissions of the accused before the trial. It deals with the defendant only as a witness, and guards against testimonial compulsion, not against "real" evidence.

The North Dakota court in the Severson case supported its opinion by referring to a similar statute, and called attention to

the fact that the defendant in that case did not become a witness.

Appellant calls attention to the fact that both the Oregon statute (ORS § 483.630) and the Washington statute (RCW 46.56.-010) specifically provide that refusal of accused to submit to the test is not admissible in evidence against him. It is significant that our statute contains no such provision. The courts should not add a limitation which the legislature has not seen fit to impose.

██ We conclude that evidence of appellant's refusal to submit to a blood test was competent and admissible. Like any other act or statement voluntarily made by him, it was competent for the jury to consider and weigh, with the other evidence, and to draw from it whatever inference as to guilt or innocence may be justified thereby.

Appellant assigns as error the giving of instructions 9, 10 and 11 [1]. These instruc-

---

[1]. Instruction No. 9. The defendant is charged with operating an automobile without due caution and circumspection. When there is a question whether or not a defendant conducted himself without due caution and circumspection, the jury must answer the question in the light of all the surrounding circumstances; for the term "due caution and circumspection" is a relative term, and the amount of caution required under it will vary in accordance with the nature of acts being done, the type of any instrumentality being handled or used, the surrounding circumstances, and the danger that reasonably should be apprehended.

Instruction No. 10. You are instructed that due caution and circumspection, as those words are used in the instruction just given, mean such caution and circumspection as are reasonably appropriate to avoid injury to one's self and others, under the conditions at hand as they would be viewed by an ordinarily reasonable person in the same situation as the person whose conduct is in question. To exercise due care and circumspection is to take those proper precautions which a person of ordinary prudence would use in the same circumstances. Conduct does not need to amount to wantonness or to recklessness to show

tions, particularly 10 and 11, when considered with instruction 2, defining and applying the law of involuntary manslaughter, would authorize a conviction on evidence of conduct amounting to no more than ordinary negligence. Instruction 30 refers to interrogatories which the jury was required to answer. The interrogatories submitted likewise convey the impression that a conviction is warranted on proof of ordinary negligence.

■ The practice of requiring the jury to answer special interrogatories, or to render a special verdict, in criminal cases is not to be encouraged, except in cases contemplated by § 19–2304 I.C. See I.C. §§ 19–2132, 19–2306 through '10, and 19–2315; 23 C.J.S. Criminal Law § 1399; 53 Am. Jur., Trial, § 1066; State v. Harold, 45 Wash.2d 505, 275 P.2d 895; People v. Allen, 47 Cal.App.2d 735, 118 P.2d 927, 934.

The information in this case was filed November 30, 1956. It was drawn under the involuntary manslaughter statute as amended in 1949, § 18–4006. Trial was commenced December 5, 1956. All this occurred before the decision by this court on February 12, 1957, in State v. Davidson, 78 Idaho 553, 309 P.2d 211. In that case we held that Chapter 273 of the 1953 Ses-

sion Laws, defining negligent homicide and fixing the penalty therefor, repealed the portion of the involuntary manslaughter statute added by the 1949 amendment. The later act (1953) defines negligent homicide as follows:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." § 49–1101, I.C.

■ As was said in the Davidson case [78 Idaho 553, 309 P.2d 214] the negligent homicide statute, which supplanted the 1949 amendment to the involuntary homicide statute, requires proof of "reckless disregard of the safety of others." Hence, the instructions here complained of are erroneous in that they do not require proof of conduct amounting to "reckless disregard of the safety of others" as defined in State v. Davidson, supra. See also, State v. Gummerson, 79 Idaho 30, 310 P.2d 362.

■ A portion of instruction No. 7 is assigned as error, to-wit: "One cannot escape criminal responsibility for homicide

and to constitute a lack of due care and circumspection.

Instruction No. 11. You are instructed that if you find that the defendant, at the time of the accident, was driving a motor vehicle while under the influence

of intoxicating liquor, or in an unlawful manner, or without due caution and circumspection, and the accident and the death of the deceased resulted from such driving, then the defendant is guilty of involuntary manslaughter.

merely because factors other than his felonious acts contribute to the death * *." Although the instruction is not reversibly erroneous, the word "felonious" should be omitted therefrom.

 Upon cross-examination defendant (appellant) was asked if he had ever been convicted of a felony, to which he answered, no. Plaintiff's exhibit 16 was offered and admitted. It is a duly authenticated copy of the record of a conviction of first degree forgery in Spokane county, Washington. Defendant objected to the exhibit on the ground the conviction had been vacated by the Washington court at the end of a period of probation, and that an order of dismissal had been entered releasing him "from all penalties and disabilities resulting from the filing of the charge". The record of dismissal was offered by defendant and admitted in evidence. We see no error. The dismissal does not expunge the conviction so far as impeachment is concerned. It had the effect of restoring "civil rights". § 19-2604, I.C. But there is no civil right to be immune from impeachment. § 9-1209, I.C.

We do not discuss other assignments since so far as they have merit the errors complained of are not likely to occur on a new trial.

The judgment is reversed and the cause is remanded, with directions to the trial court to allow the prosecuting attorney to amend the information to conform more closely to § 49-1101, I.C., and to grant a new trial.

PORTER, SMITH and McQUADE, JJ., concur.

KEETON, Chief Justice (dissenting).

I concur in the conclusion that the judgment of conviction should be reversed. I am not in agreement with the holding that certain evidence received was properly admitted. Nor do I think that defendant can be now tried under the negligent homicide statute, Sec. 49-1101, I.C. This statute by its terms does not include the offense of manslaughter when the death of another is caused by one driving a motor vehicle while under the influence of intoxicating liquor. If defendant were so driving, and death resulted to another by reason of such drunken driving, defendant is guilty of manslaughter. He violated a positive statute forbidding him so to drive, which violation is not covered by the negligent homicide statute.

"Where one commits an act expressly forbidden by law and thereby causes the death of another, such person may be convicted of involuntary manslaughter." State v. Scott, 72 Idaho 202, 239 P.2d 258, 263.

The crimes of manslaughter and negligent homicide are criminal offenses defined by separate statutes. The violation of one does not include the violation of the other.

**312**

Further, the accused was never given a preliminary examination or held to answer for the crime of negligent homicide.

Under Sec. 49–352, I.C., a person suspected by a police officer of driving a motor vehicle while in an intoxicated condition, placed under arrest, and requested to submit to a chemical test, may refuse so to do and the statute expressly provides that under such circumstances, the test shall not be given.

The majority opinion holds that such refusal to submit to a chemical test may be received in evidence against the accused. I consider this ruling clearly erroneous. No person suspected of a crime can be required to furnish evidence on which to base a charge against himself, or to further his prosecution. Nor is he required to cooperate with prosecuting officials.

The receiving in evidence of defendant's refusal to submit to a blood test is, in my opinion, reversible error. Objection to such evidence should be sustained. One cannot be convicted of a crime for claiming a right open to all persons.

Regardless of the statute, I do not think that any doctor, technician, police officer, or any other person has the right to stick sharp instruments into the body of any accused, against his will, to secure evidence, and any person so doing without the voluntary consent of the accused is, in my opinion, guilty of battery.