**Aleen R. HYDE, Plaintiff and Appellant,**

v.

**Earl N. DORIUS, Director, Drivers License Division, Department of Public Safety, State of Utah, Defendant and Respondent.**

**No. 14064.**

Supreme Court of Utah.
April 23, 1976.

1. *State v. Woolman,* 84 Utah 23, 33 P.2d 640; Wharton's Criminal Law & Proc., Vol. 5, Sec. 2099.

**452**

William D. Marsh, of Marsh & Marsh, Ogden, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., Bernard M. Tanner, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

On appeal is a judgment of the trial court sustaining a trial examiner's revocation of plaintiff's driver's license. We reverse, for the reason plaintiff's license is not subject to revocation.

In this matter, the affidavit of the officer states that plaintiff was arrested at 9:45 a. m. and the time of her refusal was 9:50 a. m. According to the arresting officer, Nichols, he and a fellow officer removed plaintiff from her vehicle, placed her under arrest, handcuffed her and put her in a police car. Officer Nichols testified they left her in the police vehicle alone for four or five minutes. Then he and Officer Hales returned to the vehicle and Hales informed her of the implied consent law. Plaintiff's response was that she wouldn't listen, and that the police didn't know what they were talking about.

Officer Nichols conceded that he never detected alcohol on plaintiff. He described her responses in the car as requesting the removal of the handcuffs, crying, screaming and belligerent, and asserting that they could not arrest her on private property. Plaintiff was taken to the jail where Officer Nichols gave her two field agility tests; she performed fairly well on the straight line test, but she had difficulty hopping. (Mrs. Hyde who is 55 years old testified that she is unable to hop.)

The affidavit of refusal was based strictly on what occurred in the vehicle within a period of approximately five minutes when the plaintiff was concededly extremely upset. Plaintiff was never again proffered an opportunity to take one of the chemical tests, although she participated in the field sobriety tests at the jail. Officer Nichols testified that he executed the affidavit of refusal on the basis of the statement of Officer Hales that plaintiff's responses constituted a refusal.

Under the circumstances here, four or five minutes is not a reasonable time within which to expect a sentient consent or refusal; particularly when the court found that, at the scene, plaintiff was upset, irritated and scared as a result of the accident and accompanying events.

The trial court ruled that once plaintiff had been advised of the implied consent, any response other than agreement to take the test was a constructive refusal.

The construction by the trial court does not accord with the express provisions of Section 41–6–44.10, U.C.A.1953. Subsection (a) of this statute provides in mandatory language: "Any person operating a motor vehicle in this state shall be deemed to have given his consent . . .." Subsection (b) provides: "Any person operating a motor vehicle in this state shall be determined to have given his consent . . .." Subsection (d) provides: "Any person who is dead, unconscious, or in any other condition rendering him incapable of refusal to submit to any such chemical test or tests shall be deemed not to have withdrawn the consent provided for in subsections (a) or (b) of this section. . . ."

In contrast subsection (c) provides:

If such person has been placed under arrest and has thereafter been requested to submit to any one of the chemical tests provided for in subsections (a) or (b) of this section and *refuses to submit* to such chemical test, the test shall not be given . . .. [Emphasis supplied.]

In *State v. Bock* [1] the court construed an implied consent statute, with provisions similar to Section 41-6-44.10. The court contrasted the provisions of the Idaho statute (Section 49-352, I.C.), with a North Dakota statute (39-0801, N.D.R.C.1953, Sup.), which specified "no defendant shall be required to submit to any chemical test without his consent." The court stated:

: . . . Our statute is different. By operating a motor vehicle in this state the defendant is "demed to have given his consent to a chemical test". The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made.

Our Utah statute so requires.

In *Mills v. Swanson*,[2] the court elaborated on the holding in *State v. Bock* by explaining that "expressly" meant in direct or unmistakable terms, by means declared and not merely left to implication. The court stated that what constituted a refusal to take the test must depend on the circumstances. It was suggested that if an officer were in doubt he could request a person to sign a written authorization and waiver for the administration of the test.

█ A review of the entire record reveals that there was an insufficient evidentiary basis to sustain the finding that plaintiff "refused to submit" to the chemical tests. The sole ground upon which the court's finding was predicated was her alleged constructive refusal which is not consonant with the legislative intent expressed in Section 41-6-44.10.

TUCKETT, Justice, concurs in the main opinion and also concurs in the comments of Mr. Chief Justice HENRIOD.

HENRIOD, Chief Justice (concurring in the result):

I concur in the result, since the record below was lacking in evidence to justify the conclusion below, and the reasons assigned therefor were not a basis for invoking the sanctions of the statute under the particular facts of this case.

ELLETT, Justice (dissenting):

A highway patrolman observed Mrs. Hyde making erratic maneuvers in the parking lot of a private hospital. He believed that she was under the influence of intoxicating liquor and called a city policeman who placed her under arrest for driving a motor vehicle while under the influence of intoxicating liquor.

She was requested to take a sobriety test but did not do so and the officer thereafter initiated proceedings to have her driving license revoked.

While Mrs. Hyde claimed that the officer had no authority to arrest her while she was on private property, her appeal does not raise that point. The thrust of the appeal is that " . . . her attempts to protest the police action did not constitute the type of unequivocal rejection of the test necessary to excuse the officers from supplying further information to her."

The defendant pursuant to statute [1] revoked her driving permit and she brought an action in the district court to have the ruling of Mr. Dorius set aside. After a full hearing the trial court sustained the ruling of Mr. Dorius, the director of the Driver License Division, and this appeal is from that ruling.

It is to be noted that this is a civil matter and we should affirm the trial court if

1. 80 Idaho 296, 328 P.2d 1065, 1072-1073 (1958).

2. 93 Idaho 279, 460 P.2d 704 (1969).

1. Sec. 41-6-44.10 as found in Replacement Vol. 5A U.C.A.1953.

there is substantial competent evidence to sustain it.[2]

The trial judge found that she was properly arrested; that she was requested to take a chemical test under the implied consent law, and, that the response given by her actions, and her failure to affirmatively indicate either in word or action that she would take either of the two requested tests constituted a constructive refusal.

On appeal she contends that she could not have made a constructive refusal because she did not knowingly or intentionally refuse to take a test.

The evidence at trial showed that Mrs. Hyde was belligerent and would not listen as the officers explained to her the significance and result of a failure on her part to take a chemical test for sobriety, to wit, that she would lose her license to drive for one year. She told the officers that she did not have to listen, and that the officers did not know what they were talking about. The officers had her under arrest for over an hour and tried to get her to take either a blood test or a breath test. She never took or agreed to take either. She knew that the officer told her that because of the situation she could lose her driver's license but claimed while on the witness stand that she thought it would be because she had been in an accident.

The evidence was such as to justify the court's finding that the officers explained the implied consent law to Mrs. Hyde at least on two occasions and that the only response received from her was that she wanted to go home and that the officers could not arrest her on private property.

The ruling of the trial court should be affirmed.[3]

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, J.

---

2. *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176; *DeVas v. Noble*, 13 Utah 2d 133, 369 P.2d 290.

3. While the matter is not raised on appeal it is to be noted that the law prior to 1941 was to the effect that it was unlawful to drive

a vehicle upon a public street or highway, and this old law was undoubtedly in Mrs. Hyde's mind at the time. In 1941 the law was amended and now reads: "It is unlawful . . . to drive or be in actual physical control of any vehicle within this state." (Sec. 41–6–44, U.C.A.1953).